**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NELSON PONCE PEREZ, | Civil Action No.: 14-4610 (CCC-JBC) |
| Plaintiff, | |
| v. | **OPINION** |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**CECCHI, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court on the motion of Defendants State of New Jersey, the New Jersey State Police ("NJSP"), Colonel Rick Fuentes ("Fuentes") and New Jersey State Trooper Brian Murray ("Murray") to dismiss Plaintiff Nelson Ponce Perez's Second Amended Complaint. Mot. to Dismiss, ECF No. 44. Defendants New Jersey State Troopers Edward Walther ("Walther"), Michael Hughes ("Hughes"), Michael Travis ("Travis") and Sergeant James Snyder ("Snyder") joined in the motion. See Letter filed February 9, 2015, ECF No. 45; Letter filed February 19, 2015, ECF No. 51.[1] Plaintiff did not oppose the motion. No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the motion to dismiss is granted in part and denied in part. The Court will dismiss all of Plaintiff's claims, with

---

[1] The Court will refer to the State of New Jersey, the NJSP, Fuentes, Murray, Walther, Hughes, Travis and Snyder collectively as the "State Defendants."

1

the exception of his § 1983 and NJCRA claims against Defendants Murray, Walther, Hughes, Travis and Snyder, in their individual capacities.[2]

## II. BACKGROUND

This civil rights action arises from Plaintiff's arrest subsequent to a motor vehicle stop. Plaintiff alleges that on August 1, 2012, at approximately 1:22 a.m., New Jersey State Troopers Murray, Hughes, Walther and Travis, as well as an additional unnamed trooper ("John Doe 1"), stopped Plaintiff's vehicle as he was driving southbound on Route 9 in Little Egg Harbor Township. Second Am. Compl. ¶¶ 31-32.[3] Murray "cited Plaintiff for Traffic on Marked Lanes – Unsafe Lane Change." Id. at ¶ 33. The troopers then arrested Plaintiff without explanation and drove him to the "State Police Barracks," and then to a rest stop on the New Jersey Parkway, where they transferred him to the custody of "unknown Englewood Police Officers." Id. at ¶¶ 34-36.

The Englewood Police Officers transported Plaintiff to the City of Englewood Police Department, where they informed Plaintiff that he was arrested pursuant to a warrant based on charges in two criminal matters. Id. at ¶ 39. Plaintiff contends, however, that those charges had been "discharged," and that Plaintiff had posted bail on April 28, 2011 in both matters. Id. The Englewood Police Officers then transported Plaintiff to Bergen County Jail, where Plaintiff was able to contact his family, and where Plaintiff "participated twice in video arraignment proceedings where it was never concluded that there was an ongoing criminal matter, or that there was a valid warrant for [Plaintiff's] arrest." Id. at ¶¶ 41-42. After Plaintiff's family posted bail for his release on August 4, 2012, they were informed that "the officers had made a mistake and there was never

---

[2] Defendants do not appear to argue for the dismissal of Plaintiff's § 1983 or NJCRA claims against these individual defendants in their individual capacities. See infra Section IV.D.

[3] As required on a motion to dismiss, the Court "accept[s] all of the [Second Amended C]omplaint's well-pleaded facts as true, but may disregard legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

2

an open arrest warrant for [Plaintiff]," and the bail money was returned to them. Id. at ¶¶ 43-45. Plaintiff was not charged with an offense related specifically to the traffic stop, and was never given a date to appear in court for the two criminal matters for which Plaintiff had posted bail on April 28, 2011. Id. at ¶¶ 47-48.

On July 22, 2014, Plaintiff filed a Complaint in this Court, against the City of Englewood, its police department, police chief and unnamed police officers, Little Egg Harbor Township, its police department, police chief and unnamed police officers, and the State of New Jersey, the New Jersey State Police, Murray, Fuentes and unnamed state troopers. See Compl., ECF No. 1. Plaintiff brought this action under 42 U.S.C. § 1983, 42 U.S.C. § 1985 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1 ("NJCRA"), contending that his arrest and imprisonment violated his rights under the United States Constitution and the New Jersey Constitution, and seeking relief in the form of compensatory damages and punitive damages. See generally, id. Subsequently, the parties stipulated to the dismissal of the City of Englewood Police Department and its police chief, see ECF Nos. 10, 34, and to the dismissal of Little Egg Harbor Township, its police department, and its police chief, see ECF No. 43. Plaintiff filed an Amended Complaint on September 22, 2014 and a Second Amended Complaint on October 31, 2014.[4]

The Second Amended Complaint contains substantially the same allegations as the initial Complaint, alleging that the State Defendants are liable for violations of Plaintiff's civil rights

---

[4] Plaintiff filed the Amended Complaint as a matter of course within 21 days after service of the State of New Jersey and NJSP's first motion to dismiss. See Fed. R. Civ. P. 15(a)(1)(B); ECF Nos. 9, 27. Plaintiff did not seek leave to amend before filing his Second Amended Complaint, but Magistrate Judge James B. Clark granted Plaintiff leave *nunc pro tunc* to file the Second Amended Complaint on consent of the parties. See Pretrial Scheduling Order, ECF No. 38.

under § 1983, § 1985 and the NJCRA. See Second Am. Compl., ECF No. 36.[5] Plaintiff alleges that the troopers, Murray, Hughes, Walther and Travis, participated in Plaintiff's arrest, and that Plaintiff's arrest was "permitted and approved by Sergeant Snyder." Id. at ¶¶ 32-37. Plaintiff contends that his constitutional rights were violated because he was arrested without probable cause, the troopers failed to check the validity of the arrest warrant before transferring him to the Englewood police, Plaintiff was not provided with a timely arraignment on a specific charge, Plaintiff was not released on bail, Plaintiff was not permitted to contact his family and Plaintiff was not provided with a public defender. Id. at ¶¶ 55-56, 61. Plaintiff also alleges that "Defendants worked in connection with one another and/or conspired to arrest and/or imprison [Plaintiff] without due process of law in violation of his constitutional rights," thus making them liable for conspiracy to interfere with his rights under § 1985. Id. at ¶ 69.

Finally, Plaintiff alleges that the State of New Jersey, NJSP, Snyder and Fuentes are liable for failing to properly train and supervise troopers Murray, Hughes, Walther and Travis, and for failing to properly implement and enforce policies and procedures pertaining to checking the validity of arrest warrants, transferring individuals they have arrested, racial profiling and selective enforcement. Id. at ¶¶ 73-76, 80-86. Plaintiff's factual allegations against Fuentes are limited to the fact that "[a]t all relevant and material times, Superintendent Fuentes was responsible for the promulgation, review and enforcement of all policies, customs and practices of the New Jersey State Police." Id. at ¶ 23.

---

[5] The Second Amended Complaint names the State Defendants (the State of New Jersey, the NJSP, Murray, Fuentes, Walther, Hughes, Travis and Snyder) as well as unnamed state troopers, but does not name as defendants the parties previously dismissed by stipulation, or the City of Englewood, which was not explicitly dismissed by stipulation of the parties.

The State Defendants filed the instant motion to dismiss the Second Amended Complaint on December 5, 2014. See Mot. to Dismiss, ECF No. 44. The State Defendants first request that the Court dismiss all claims against the State of New Jersey, the NJSP, and all individual defendants in their official capacities, both for failure to state a claim under § 1983 and the NJCRA, and based upon the State's Eleventh Amendment immunity from suit in federal court. Defs.' Br. 6-11. The State Defendants also argue that Plaintiff fails to state a claim against the State of New Jersey and NJSP for failure to train and/or supervise. Id. at 12-15. The State Defendants further argue that Plaintiff's § 1985 claims against all State Defendants should be dismissed for failure to state a claim. Id. at 15-17. Finally, the State Defendants request that the Court dismiss all claims against Fuentes in his individual capacity as well as his official capacity, with prejudice, for failure to state a claim. Id. at 18-20. Plaintiff has not opposed the motion.

### III.  LEGAL STANDARD

The State Defendants bring this motion to dismiss both for failure to state a claim on which relief can be granted and based on the doctrine of sovereign immunity. See generally, Defs.' Br., ECF No. 44-1. For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, district courts must first "accept all of the complaint's well-pleaded facts as true, but may disregard legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009). Then, the court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 679). "This 'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). Further, an amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171 (3d Cir. 2013) (quoting New Rock Asset Partners, LP v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1504 (3d Cir. 1996)).

A motion to dismiss based upon sovereign immunity is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because sovereign immunity implicates the Court's subject-matter jurisdiction. See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996). In considering a motion pursuant to Rule 12(b)(1), the Court must determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357-58 (3d Cir. 2014). A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." Id. at 358. A factual attack, in contrast, "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Id. Here, the State Defendants' motion asserts the defense of sovereign immunity based on the facts as pleaded in the Second Amended Complaint and is thus a facial attack. Accordingly, the Court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Id. Further, "Eleventh Amendment immunity is an affirmative defense" and thus the State Defendants bear the burden of showing that it applies. Carter v. City of Phila., 181 F.3d 339, 347 (3d Cir. 1999).

## IV. DISCUSSION

### A. Claims Against the State of New Jersey, the NJSP, and the Individual Defendants in their Official Capacities

The State Defendants first argue that the claims against the State of New Jersey, the NJSP and the individual State Defendants in their official capacities must be dismissed because those defendants are not "persons" within the meaning of § 1983 or the NJCRA. Defs.' Br. 5-9. The State Defendants also contend that the Eleventh Amendment bars the Plaintiff's claims against the State of New Jersey, the NJSP and the individual state troopers in their official capacities. Id. at 9-11. The Court agrees.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Neither States nor state officials acting in their official capacities are 'persons' within the meaning of § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (affirming judgment vacating lower court judgment against state police department and director of state police in his official capacity); see also Ellington v. Cortes, 532 F. App'x 53, 56 (3d Cir. 2013) (individual state troopers were not "persons" within the meaning of § 1983 when acting in their official capacities) (citing Will, 491 U.S. at 71). Thus, Plaintiff's § 1983 claims against the State of New Jersey, NJSP, and the individual defendants in their official capacities must be dismissed for failure to state a claim on which relief can be granted. The same reasoning requires the dismissal of the NJCRA claims against the State of New Jersey, NJSP, and the individual defendants in their official capacities. See Didiano v. Balicki, 488 F. App'x 634, 638 (3d Cir.

2012) (concluding that definition of "person" liable under NJCRA "does not include the State or defendants which are the functional equivalent of the State").

Moreover, the Eleventh Amendment bars suit against the State of New Jersey, the NJSP and the individual defendants in their official capacities in federal court. The Eleventh Amendment to the United States Constitution "has been interpreted to make states generally immune from suit by private parties in federal court," and this sovereign immunity "extends to state agencies and departments." MCI Telecomm. Corp. v. Bell Atlantic Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001). When there is a question as to whether the state is the real party in interest in a suit against a state agency, the Third Circuit uses three factors to determine whether sovereign immunity applies: (1) whether payment for any judgment would come from the State; (2) the status of the entity under state law; and (3) what degree of autonomy the entity has. Fitchik v. New Jersey Transit Rail Operations, 873 F.2d 655, 659 (3d Cir. 1989). "Sovereign immunity 'also bars a suit against a state official in his or her official capacity because it is not a suit against the official but is rather a suit against the official's office.'" Jackson v. Gandy, 877 F. Supp. 2d 159, 167 (D.N.J. 2012). The Third Circuit has held, without resort to the Fitchik factors, that the Eleventh Amendment barred suit against a state police department and its individual troopers in their official capacities. See Ellington v. Cortes, 532 F. App'x 53, 56 (3d Cir. 2013) (affirming dismissal of Pennsylvania State Police and individual state troopers in their official capacities). Thus, the Court agrees with Defendants that sovereign immunity applies to the NJSP and the individual defendants in their official capacities, as well as to the State of New Jersey.

There are three exceptions to sovereign immunity: "1) congressional abrogation, 2) state waiver, and 3) suits against individual state officers for prospective relief to end an ongoing violation of federal law." MCI, 271 F.3d at 503. None of the exceptions apply in this case. First,

8

"Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001). Congress did not abrogate the States' sovereign immunity in enacting § 1983, Walker v. Beard, 244 F. App'x 439, 440 (3d Cir. 2007) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)), or § 1985, Seeney v. Kavitski, 866 F. Supp. 206, 209 (E.D. Pa. 1994) (citing Quern v. Jordan, 440 U.S. 332, 339-46 (1979)). Second, a state may waive sovereign immunity by consenting to suit in federal court, either by "invok[ing] our jurisdiction by bringing suit," or by making "a clear declaration that it intends to submit itself to our jurisdiction." MCI, 271 F.3d at 503-04 (citing College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 676 (1999)). There is no indication that New Jersey has waived its sovereign immunity in this case. Under the third exception, pursuant to the doctrine established in Ex Parte Young, 209 U.S. 123 (1908), "individual state officers can be sued in their individual capacities for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law." Id. at 506. This action, however, brings claims for damages against the individual officers, and thus the third exception does not apply.

The same analysis applies to Plaintiff's state law NJCRA claims, as "[28 U.S.C.] § 1367(a) does not authorize district courts to exercise jurisdiction over claims against nonconsenting States," absent an exception to the State's sovereign immunity. Figueroa v. City of Camden, 580 F. Supp. 2d 390, 405 (D.N.J. 2008) (citing Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 541 (2002)); see also Endl v. New Jersey, 5 F. Supp. 3d 689, 696-97 (D.N.J. 2014) (dismissing § 1983 and NJCRA claims against State of New Jersey, state department of corrections and corrections officers in official capacities based on sovereign immunity, as the same sovereign immunity reasoning applies in the case of both NJCRA and § 1983 claims).

In sum, in addition to failing to state a claim under § 1983 and the NJCRA, Plaintiff's claims against New Jersey, the NJSP and the individual officers in their official capacities are barred by the Eleventh Amendment. In light of the above, Plaintiff's claims against the State of New Jersey, NJSP, and Fuentes, Murray, Walther, Hughes, Travis and Snyder in their official capacities will be dismissed, with prejudice.[6] Because it appears that Plaintiff also sues Fuentes, Murray, Walther, Hughes, Travis and Snyder in their individual capacities, the Court will analyze those claims below.

### B. Section 1985 Claims Against All Individual Defendants

The State Defendants argue that Plaintiff has not pleaded sufficient facts to state a plausible claim for relief under § 1985, because Plaintiff has not pleaded facts that suggest Defendants formed a conspiracy, or that suggest the conspiracy was motivated by discriminatory animus. Defs.' Br. 16-17. Section 1985 provides a cause of action for "one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws.'" Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). To state a claim under § 1985, a plaintiff must allege facts supporting the existence of a conspiracy. See id. ("a conspiracy" is the first element a plaintiff must allege to state a § 1985 claim). Further, a plaintiff must allege facts that plausibly suggest, "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a claim. See id. (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)) (internal quotation marks omitted).

---

[6] Because the Court dismisses the State of New Jersey and the NJSP based on the aforementioned grounds, the Court does not address the State Defendants' alternative argument that Plaintiff has failed to state a claim for failure to train and/or supervise against the State of New Jersey and the NJSP.

10

Here, Plaintiff has not alleged facts that support a plausible claim against the individual defendants under § 1985. Plaintiff merely states in Count III of his Second Amended Complaint that "[a]t all times relevant and material hereto, Defendants worked in connection with one another and/or conspired to arrest and/or imprison Mr. Perez without due process of law and in violation of his constitutional rights . . . ." Second Am. Compl. ¶ 69. This conclusory statement is not entitled to the presumption of truth on a motion to dismiss. See Fowler, 578 F.3d at 210. Beyond that statement, Plaintiff does not allege the existence of any agreement between any of the Defendants to commit any of the acts listed in the Second Amended Complaint. Further, although Plaintiff alleges that certain of the State Defendants are liable for failing to train the individual troopers on policies "pertaining to racial profiling," Second Am. Compl. ¶¶ 80-81, Plaintiff does not allege any specific facts that plausibly suggest there was discriminatory animus behind any of the Defendants' actions or omissions. See Fowler, 578 F.3d at 211 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'-'that the pleader is entitled to relief.'") (quoting Iqbal, 556 U.S. at 679). In fact, in Count III of his Second Amended Complaint, alleging conspiracy in violation of § 1985, Plaintiff states that "Defendants' actions and inactions purposefully deprived, either directly or indirectly, recklessly, carelessly and/or negligently," Plaintiff of his rights. Id. at ¶ 70. Thus, even that count of the pleading is unclear as to whether Plaintiff is alleging purposeful action, or merely negligent and careless action, on the part of the Defendants.

In light of the above, the Court will dismiss Plaintiff's § 1985 claims against all State Defendants for failure to state a claim on which relief can be granted. Because the Court must grant Plaintiff leave to amend unless amendment would be inequitable or futile, see Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002), the Court dismisses these claims, against the individual defendants in their individual capacities, without prejudice.

### C. Claims Against Fuentes in His Individual Capacity

Finally, the State Defendants argue that Plaintiff's claims against Fuentes must be dismissed because they do not sufficiently allege Fuentes' personal involvement in the alleged constitutional violations. Defs.' Br. 18-20. The Court agrees. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). A plaintiff can show personal involvement in the alleged constitutional violations "through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. "Policy-making supervisors may be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" Broadwater v. Fow, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 129 n.5 (3d Cir. 2010)). Further, "[a] supervisor's failure to employ a specific supervisory practice or procedure to correct a known unreasonable risk of constitutional harm" may satisfy the personal involvement requirement. Id. (citing Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989)); see also City of Canton v. Harris, 489 U.S. 378, 388 (1989) ("[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). "A failure to train only amounts to deliberate indifference 'where the need for more or different training is obvious' and the lack of training can

be expected to result in constitutional violations." Broadwater, 945 F. Supp. 2d at 588 (quoting Carter v. City of Phila., 181 F.3d 339, 357 (1999)).

There are no facts in the Second Amended Complaint suggesting that Fuentes personally directed or knowingly acquiesced in the alleged violations. The only facts concerning Fuentes in the Second Amended Complaint are: that "[a]t all relevant and material times, Superintendent Fuentes was responsible for the promulgation, review and enforcement of all policies, customs and practices of the New Jersey State Police," id. at ¶ 23; and that Fuentes, along with New Jersey, the NJSP and Snyder, "failed to properly implement and enforce policies and procedures" pertaining to transferring arrested individuals, checking the validity of arrest warrants, racial profiling and selective enforcement and proper identification of arrested individuals, id. at ¶¶ 74-76, 80-85.

The Second Amended Complaint also contains the conclusory statement that "Defendants, the State of New Jersey, the [NJSP], Superintendent Fuentes and Sergeant Snyder's failures were of such magnitude that they amount to a deliberate indifference to the rights of persons with whom [the troopers] came into contact." Second Am. Compl. ¶ 77. There is nothing, however, which shows that Fuentes established and maintained a policy, practice or custom that caused the alleged constitutional harms, or that Fuentes was aware of a risk of constitutional harm, knew of the alleged failure to train the troopers in this case, or knew of any unlawful conduct by any troopers. See Broadwater, 945 F. Supp. 2d at 588-90 (dismissing § 1983 claim against state police training instructor where plaintiff alleged that instructor was "responsible for the advanced and regional training of all of the troopers employed by [the state police]," but did not allege that instructor evaluated trooper defendants accused of using excessive force or that instructor had knowledge of troopers' unlawful conduct); Sample, 885 F.2d at 1118 (to state claim for supervisory liability,

plaintiff had to show "a specific practice or procedure that [defendant] failed to employ," that "the existing custom and practice without that specific practice or procedure created an unreasonable risk" of constitutional harm, that defendant was aware of that risk and was indifferent to it, and that the harm suffered resulted from the failure to employ the supervisory practice or procedure). Without any allegations showing that Fuentes had personal involvement or actual knowledge and acquiescence in the conduct at issue, Plaintiff fails to state a § 1983 claim against Fuentes.

For the same reasons, Plaintiff fails to state a claim under the NJCRA against Fuentes. See Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289, 298 (D.N.J. 2012) ("[B]ecause respondeat superior liability is not permitted under § 1983, and because New Jersey courts interpret the NJCRA as analogous to § 1983, the Court holds that respondeat superior liability is not permitted for claims under the New Jersey Constitution and the NJCRA."); see also Didiano v. Balicki, No. 10-4483, 2011 WL 1466131, at *10 (D.N.J. Apr. 18, 2011) (dismissing NJCRA and § 1983 claims because plaintiff failed to allege facts indicating that defendant had personal knowledge of and acquiescence to, or participated directly in, alleged violations of plaintiff's rights). Therefore, the claims against Fuentes in his individual capacity are dismissed, without prejudice.

Although the State Defendants argue that the claims against Fuentes should be dismissed with prejudice, they do not present any reasons why amendment would be inequitable or futile. Thus, the Court will permit Plaintiff to amend his complaint with respect to the claims against Fuentes in his individual capacity. See Grayson, 293 F.3d at 108.

### D. Claims Against the Remaining Defendants in Their Individual Capacities

Defendants do not appear to argue for the dismissal of Plaintiff's § 1983 or NJCRA claims against the remaining individual defendants, Murray, Walther, Hughes, Travis and Snyder, in their individual capacities. The Court will allow those claims to proceed at this time.

## V.  CONCLUSION

Based on the reasons set forth above, the State Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's claims against the State of New Jersey, the New Jersey State Police, and all individual defendants in their official capacities are dismissed, with prejudice. Plaintiff's claims against the individual defendants in their individual capacities for conspiracy under § 1985 are dismissed, without prejudice. Plaintiff's claims against Colonel Fuentes in his individual capacity are also dismissed, without prejudice. Plaintiff's § 1983 and NJCRA claims against the remaining individual defendants, Murray, Walther, Hughes, Travis and Snyder, in their individual capacities, will be allowed to proceed at this time. An appropriate order accompanies this Opinion.

Dated: July 15, 2015

_____
CLAIRE C. CECCHI, U.S.D.J.