NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NELSON PONCE PEREZ, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF ENGLEWOOD, et al., <br><br> Defendants. | Civil Action No.: 14-4610 (CCC) <br><br><br><br> OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter arises from the complaint of Plaintiff Nelson Ponce Perez ("Plaintiff") stemming from his arrest in the early morning hours of August 1, 2012. Plaintiff's claims are set forth in his second amended complaint, (ECF No. 36 ("2d Am. Compl.")), which alleges violations of his civil and constitutional rights. Defendants Trooper Brian Murray ("Murray"), Trooper Michael Travis ("Travis"), Trooper Edward Walther ("Walther"), Trooper Michael Hughes ("Hughes"), and Sergeant James Snyder ("Snyder") (collectively, "Defendants"), all officers of the New Jersey State Police sued in their individual capacities, now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 79). Plaintiff opposes summary judgment as to claims against Murray and Travis only. (ECF No. 83). As to claims against Hughes, Walther, and Snyder, Defendants' motion is unopposed.

Pursuant to Federal Rule of Civil Procedure 78(b), the Court decides Defendants' motion without oral argument. Having considered the parties' submissions, the Court will grant Defendants' motion.

## II. BACKGROUND[1]

### A. Events Prior to the August 1, 2012 Incident

Prior to the August 1, 2012 incident, Plaintiff was charged in New Jersey with theft by deception and theft by unlawful taking in violation of various New Jersey criminal statutes. (Def. SMF ¶ 1). On or about March 29, 2011, the Englewood City Municipal Court officially brought the two theft charges against Plaintiff. (*Id.* ¶ 2). In April 2011, bail was set, (*id.* ¶ 3), and Plaintiff posted bail. (*Id.* ¶ 4).

### B. The August 1, 2012 Incident

Around 1:22 A.M. on August 1, 2012, Troopers Murray and Travis observed a vehicle driven by Plaintiff repeatedly cross the center lane of U.S. Route 9 in Little Egg Harbor Township.[2] (*Id.* ¶ 5). Murray then effected a stop of Plaintiff's vehicle.[3] (*Id.* ¶ 6). Murray obtained Plaintiff's identification and performed background checks, including a search of the National Crime Information Center ("NCIC") database; the NCIC database indicated the existence of a warrant for Plaintiff's arrest issued by the Englewood City Municipal Court. (*Id.* ¶¶ 7-9). Although Plaintiff disputes the validity of the warrant, Plaintiff does not appear to dispute that the NCIC

---

[1] Background facts are taken from the parties' statements of material fact, pursuant to Local Civil Rule 56.1. (ECF No. 79-1, Defendants' Statement of Undisputed Material Fact ("Def. SMF"); and ECF No. 83 at 1-5, Plaintiff's Response to Defendants' Statement of Undisputed Material Fact ("Pl. SMF")). To the extent that Plaintiff has admitted certain facts, the Court will cite only to "Def. SMF" and the corresponding paragraph number.

[2] Plaintiff purports to dispute that Murray and Travis observed this behavior, but does not provide a citation to the record showing that this fact is in dispute. (Pl. SMF ¶ 5). As such, the Court deems such facts admitted. *See McCann v. Unum Provident*, 921 F. Supp. 2d 353, 358-59 (D.N.J. 2013) (deeming purportedly disputed facts admitted when, on motion for summary judgment, the nonmoving party failed to cite affidavits or other documents to support that the facts were genuinely in dispute).

[3] Plaintiff avers that "Murray and Travis" effected the stop. (Pl. SMF ¶ 6).

2

database search yielded a "hit."[4] (ECF No. 83 at 10). This warrant related to the earlier theft charges against Plaintiff. In compliance with both police procedures and a cautionary statement printed on the NCIC warrant hit, (*id.* ¶¶10-11), State Police dispatch sought confirmation of the NCIC hit from the Englewood Police Department at 1:31 A.M., (*id.* ¶ 12). Around that time, Troopers Walther and Hughes arrived on the scene as back up. (*Id.* ¶ 13). At 1:51 A.M., the Englewood Police Department confirmed the warrant hit. (Pl. SMF ¶ 14). After receiving confirmation of the NCIC hit, Murray and Travis arrested Plaintiff. (Def. SMF ¶ 15).

After Plaintiff was arrested, Murray and Travis transported him to the State Police barracks in Tuckerton, NJ for processing. (*Id.* ¶ 16). After processing, Murray and Travis transported Plaintiff to a rest stop near milepost 100 on the Garden State Parkway, where they transferred custody of Plaintiff to the Englewood Police Department. (*Id.* ¶¶ 21-22). At some point, Murray completed an arrest report describing the incident; the arrest report was approved by Sergeant Snyder. (*Id.* ¶¶ 16-17). Approving the arrest report was the only action Snyder took regarding oversight of Plaintiff's arrest. (*Id.* ¶ 18).

At around 9:30 A.M., Plaintiff was committed to jail by the Englewood Police Department. (*Id.* ¶ 24). Later that day, the Englewood City Municipal Court ordered that Plaintiff be held in custody while awaiting his court date on August 16, 2012. (*Id.* ¶ 25). However, on August 2, 2012, Plaintiff was discharged. (*Id.* ¶ 26). Plaintiff later pled guilty to driving in an unsafe manner in connection with the August 1, 2012 incident. (*Id.* ¶¶ 27-30).

---

[4] Indeed, Plaintiff acknowledges that the NCIC search revealed a warrant. *See* (ECF No 83 at 10) ("Trooper Murray submitted Mr. Perez's information to the NCIC system. After an initial 'hit' [Troopers] Murray and Travis relied upon police dispatch to confirm the warrant.")

3

## C. Subsequent Procedural History

Plaintiff instituted this action on July 22, 2014 through his original complaint, (ECF No. 1), which brought claims against moving Defendants and others for violations of Plaintiff's civil and constitutional rights in connection with the August 1, 2012 incident. In September and October 2014, Plaintiff voluntarily dismissed several groups of defendants. (ECF Nos. 10, 34, and 35).

Plaintiff filed his second amended complaint on October 31, 2014. Because the second amended complaint did not state any claims against various defendants, those defendants were dismissed on November 17, 2014. (ECF No. 43). The remaining defendants filed a motion to dismiss Plaintiff's second amended complaint. (ECF No. 44). On July 25, 2015, the Court granted the motion in part and dismissed several additional defendants. (ECF No. 57). The Court also dismissed all claims against Murray, Travis, Hughes, Walther, and Snyder in their official capacities as well as Plaintiff's claims alleging a civil rights conspiracy in violation of 42 U.S.C. § 1985. (*Id.*). Claims against moving Defendants in their individual capacities were allowed to proceed and constitute all remaining claims in this action.

Plaintiff's remaining claims include: (1) false arrest in violation of 42 U.S.C § 1983; (2) false imprisonment in violation of 42 U.S.C. § 1983; (3) against Snyder only, failure to properly train and supervise State Troopers resulting in inadequate procedures for checking the validity of a warrant in violation of 42 U.S.C. § 1983; and (4) false arrest and false imprisonment in violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, *et seq.*[5]

---

[5] NJCRA creates a private cause of action when civil rights secured by United States or New Jersey law are violated by a person acting under color of law. NJCRA was modeled after 42 U.S.C. § 1983 and courts in this Circuit have routinely analyzed them analogously. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). The Court will therefore analyze Plaintiff's NJCRA claims together with his analogous claims under 42 U.S.C. § 1983. *See Ianuale v. Keyport*

4

On September 21, 2016 this case was referred to mediation. (ECF No. 69). Mediation failed to resolve the dispute and on January 12, 2018, the remaining defendants filed the instant motion. Defendants principally argue that summary judgment should be granted because the undisputed facts show that they are entitled to qualified immunity from all of Plaintiff's remaining claims. (ECF No. 79-2 at 3-4).

### III. LEGAL STANDARD

Summary judgment is appropriate if the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), demonstrate that there is no genuine issue as to any material fact, and, construing all facts and inferences in a light most favorable to the non-moving party, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).

The moving party has the initial burden of proving the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-moving party has the burden of identifying specific facts to show that, to the contrary, a genuine issue of material fact exists for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to meet its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted); *see also Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact," the opponent must

---

*Twp.*, No. 15-8256, 2016 WL 5955527, at *7 (D.N.J. Oct. 13, 2016) (analyzing together claims for false arrest and false imprisonment under 42 U.S.C. § 1983 and NJCRA).

exceed "the 'mere scintilla' threshold . . . ."). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV. DISCUSSION

Plaintiff claims that Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments by arresting and detaining him without probable cause in violation of 42 U.S.C. § 1983 and NJCRA.[6] Specifically, Plaintiff alleges that Defendants arrested and remitted him to the custody of the Englewood Police Department despite the fact that the warrant for his arrest was not valid. (ECF No. 83 at 15). "A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights." *Thomas v. Att'y Gen. of N.J.*, 692 F. Supp. 2d 444, 449. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

---

[6]Plaintiff's second amended complaint states separate causes of action under each statute for false arrest and false imprisonment. However, "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In particular, both claims can be analyzed together for the purposes of determining if Defendants enjoy qualified immunity. *See Ianuale*, 2016 WL 5955527, at *7 ("In regard to claims of false arrest and false imprisonment, 'the qualified immunity analysis turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate the criminal prosecution.'") (quoting *Palma v. Atlantic County*, 53 F. Supp. 2d 743, 769 (D.N.J. 1999)).

6

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

> Thus, a plaintiff must demonstrate two essential elements to maintain a claim under section 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law.

*Thomas*, 692 F. Supp. 2d at 449 (citations omitted).

In their summary judgment motion, Defendants, who are being sued in their individual capacities, principally assert that they enjoy qualified immunity from Plaintiff's claims. (ECF No. 79-2 at 3-4). "The doctrine of qualified immunity provides that 'government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.'" *Thomas*, 692 F. Supp. 2d at 450 (D.N.J. 2010) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Consequently, "government officials are immune from suit in their individual capacities unless, 'taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right' and 'the right was clearly established' at the time of the objectionable conduct." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 450-51 (citing *Saucier*, 533 U.S. at 202). "That is, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 451 (quoting *Couden v. Duffy*, 446 F.3d 483, 492 (2006)). "'If the officer's mistake as to what the law requires is reasonable,' the officer is entitled to qualified immunity." *Id.* (quoting *Couden*, 446 F.3d at 492). "Further, '[i]f

7

officers of reasonable competence could disagree on th[e] issue, immunity should be recognized.'" *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant." *Id.*

"The Third Circuit has held that an officer who reasonably relies on the existence of a warrant for arrest is entitled to qualified immunity in a civil rights action brought against him for unlawful arrest." *Wise v. City of Philadelphia*, No. 97-2651, 1998 WL 464918, at *2 (E.D. Pa. July 31, 1998) (citing *Capone v. Marinelli*, 868 F.2d 102, 105-06 (3d Cir. 1989)); *see also Harris v. N.J. State Trooper J.B. Zyskowski*, No. 12-7191, 2016 WL 1182256, at *7 (D.N.J. Mar. 28, 2016) ("[C]ourts 'have generally extended immunity to an officer who makes an arrest based on an objectively reasonable belief that there is a valid warrant.'") (quoting *Berg v. County of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000)). "The question on summary judgment is whether the officers' erroneous arrest of [the plaintiff] was objectively reasonable under the circumstances." *Gonzalez v. Cape May County*, No. 12-0517, 2015 WL 1471814, at *8 (D.N.J. Mar. 31, 2015). "To make this determination, the court must examine the information possessed by the defendants when they relied on the warrant." *Wise*, 1998 WL 464918, at *2 (citing *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997)).

### A. Murray and Travis

The Court finds from the undisputed facts that Murray and Travis believed that a valid warrant existed for Plaintiff's arrest when they took him into custody on the morning of August 1, 2012 and that such belief was objectively reasonable. Accordingly, Plaintiff's claims against Murray and Travis must fail as a matter of law because they enjoy qualified immunity from such claims. The record reflects that Murray and Travis performed an NCIC search using Plaintiff's information and obtained a hit. In compliance with New Jersey State Police procedures, (ECF No.

79-4 at 6), Murray and Travis confirmed the NCIC hit and warrant with the Englewood Police Department prior to arresting Plaintiff. In support of these facts, Defendants offer: (1) a printed copy of the NCIC search results obtained by Murray at 1:30 A.M. on August 1, 2012, (*id.* at 2-4); (2) a printed message from State Police dispatch to the Englewood Police Department at 1:35 A.M. on August 1, 2012 requesting confirmation of Plaintiff's warrant, (*id.* at 9); (3) the printed reply from the Englewood Police Department confirming the warrant minutes later, (*id.* at 11); (4) Murray's deposition testimony, (ECF No. 79-3 at 57); and (5) his sworn certification, (*id.* at 37). The undisputed facts thus show that Murray and Travis reasonably believed that they were arresting Plaintiff pursuant to a valid arrest warrant. *See Harris*, 2016 WL 1182256, at *6 (holding that an arresting officer reasonably believed in the existence of a valid arrest warrant when he learned of the warrant through the Automated Crime System database and other officers verbally confirmed the warrant). Plaintiff fails to either dispute such facts or demonstrate that a genuine issue of material fact exists that would call into question the reasonableness of Defendants' belief in a valid warrant for Plaintiff's arrest.[7]

---

[7] The Court notes that Plaintiff does argue that the arrest report raises a genuine issue of material fact as to whether Murray in fact knew that Plaintiff's warrant was not valid at the time of the arrest. (ECF No. 83 at 15). Specifically, Plaintiff argues that Murray's knowledge of the warrant's invalidity is supported by the fact that he marked a box on the arrest report indicating that the NCIC search did not yield a hit. Murray has testified that this was an inadvertent error and that he intended to mark the box immediately above, which would have correctly indicated the NCIC hit. (ECF No. 87-2 at 5). Because it is not in dispute that an NCIC hit did indeed occur, *see supra* n.4, Murray's mark on the arrest report cannot be considered a genuine issue of material fact. No reasonable inference connects the mark with any alleged knowledge of the warrant's invalidity because the mark, taken at face value, merely indicated that an NCIC search yielded no result, which is undisputedly false. Even when considered in the light most favorable to Plaintiff, nothing in Murray's arrest report indicates that he believed that the warrant uncovered by the NCIC search was invalid. The arrest report, therefore, does not raise any factual issue necessitating resolution by a jury.

Nonetheless, the Court acknowledges Plaintiff's argument that Murray and Travis should have obtained translation services that would have allowed Plaintiff, who does not speak English, to explain his warrant situation. (ECF No. 83 at 14). However, the fact that Murray and Travis did not obtain such services does not establish that they violated Plaintiff's constitutional rights. "The United States Supreme Court has clearly established that an officer 'executing an arrest warrant is not required by the constitution to investigate independently every claim of innocence.'" *Wise*, 1998 WL 464918, at *1 (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)). "This is so even if the arrest was made pursuant to a bench warrant that was invalid at the time of arrest." *Id.* Thus, even if Plaintiff had been able to communicate to Defendants his assertion that the warrant for his arrest was invalid, Defendants could still have reasonably made the arrest on the strength of what seemed to be a valid arrest warrant. *See id.* at *3 (holding that arresting detectives reasonably relied on a bench warrant that, unknown to them, was invalid although arrestee showed detectives a letter from court-appointed counsel asserting the invalidity of the bench warrant).

Since there is no genuine dispute of material fact relevant to Murray and Travis's determination that a valid warrant existed, and since from the undisputed facts the Court finds that Murray and Travis reasonably relied on the existence of a valid warrant in arresting Plaintiff, the Court concludes that Murray and Travis possess qualified immunity from Plaintiff's false arrest and false imprisonment claims. The Court will therefore grant summary judgment in favor of Murray and Travis.

### B. Walther and Hughes[8]

Compared to Murray and Travis, who effected the arrest of Plaintiff, the role of Walther and Hughes in the August 1, 2012 incident was more limited. Walther and Hughes were summoned to the place where Plaintiff's truck was stopped on U.S. Route 9 at some time after the traffic stop had already begun, but before the warrant hit was confirmed by the Englewood Police Department. Walther and Hughes acted as "back up" to Murray and Travis. (Def. SMF ¶ 13). In performing this auxiliary role, Walther and Hughes were under no obligation to conduct an independent inquiry into the existence of a warrant or probable cause to arrest Plaintiff, and reasonably relied on Murray's judgment and the Englewood Police Department's confirmation of the NCIC hit. *See McHenry v. County of Delaware*, No. 04-1011, 2005 WL 2789182, at *6 (E.D. Pa. Oct. 24, 2005) ("In assisting an officer from another jurisdiction, a police officer is entitled to rely [] upon the assumed validity of an arrest warrant and the accuracy of the information conveyed by the police officer requesting assistance."); *see also Fullard v. City of Philadelphia*, No. 95-4949, 1996 U.S. Dist. LEXIS 5321, at *28 (E.D. Pa. Apr. 22, 1996) ("The Constitution does not mandate that every single officer conduct an independent investigation into the existence of [] probable cause. Instead, lower-level officers are permitted to rely upon the investigation conducted by more senior officials."). The Court therefore finds that Walther and Hughes neither violated Plaintiff's rights nor acted contrary to clearly established law, and thus enjoy qualified immunity. *See McHenry*, 2005 WL 2789182, at *9 (holding that police officer tasked with transporting an arrested person to prison enjoyed qualified immunity from that individual's false arrest claim). The Court will therefore grant summary judgment in favor of Walther and Hughes.

---

[8]The Court again notes that Plaintiff does not oppose Defendants' motion for summary judgment as to Walther and Hughes. (Pl. SMF ¶ 13).

## C. Snyder[9]

As to the false arrest and false imprisonment claims against Sergeant Snyder, who supervised Murray and Travis, the defense of qualified immunity enjoyed by Murray and Travis extends to him as well. *See Capone*, 868 F.2d at 107 n.7 (concluding that where a supervisor's involvement consisted of learning of an arrest through a report, whatever qualified immunity defense the arresting officer enjoyed from a false arrest claim was likewise enjoyed by the supervisor). Therefore, the Court will grant summary judgment in favor of Snyder as to Plaintiff's false arrest and false imprisonment claims.

As to the claim that Snyder failed to train and supervise State Troopers and implement policies relating to the verification of arrest warrants, this claim is not *necessarily* foreclosed as a consequence of the arresting officers' qualified immunity. *See Gilles v. Davis*, 427 F.3d 197, 207 n.7 (3d Cir. 2005) ("A supervising authority may be liable under § 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact, notwithstanding the qualified immunity of an officer at the scene.").

Summary judgment is nevertheless appropriate. There can be "no genuine issue as to any material fact," where a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. Here, no evidence cited by Plaintiff supports a finding that Snyder acted with deliberate indifference to the

---

[9] The Court again notes that Plaintiff does not oppose Defendants' motion for summary judgment as to Snyder. (Pl. SMF ¶ 17).

12

constitutional rights of Plaintiff or others encountered by the State Troopers under Snyder's supervision. There is no evidence or allegation of, for example a "pattern of similar constitutional violations by untrained employees" such as is typically required to establish deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 52 (2011). Nor does Plaintiff identify specific training that Snyder should have provided which would have prevented his arrest. *See Diaz v. City of Hackensack*, No. 06-4615, 2010 WL 1459582, at *1 (D.N.J. Apr. 12, 2010) (dismissing failure to train claim because it did not identify specific training the absence of which caused the plaintiff's injury). Because deliberate indifference is an essential element of Plaintiff's failure-to-train claim, Snyder is entitled to summary judgment. *See Gilles*, 427 F.3d at 207 n.7 (affirming summary judgment on a failure to train claim where plaintiffs did not identify specific training causally related to their injuries or demonstrate that the absence of such training reflected a deliberate indifference to violations of constitutional rights).

Having found that there exists no genuine issue as to any material fact, and having found that, based on the undisputed facts, Defendants enjoy qualified immunity with respect to all of Plaintiff's remaining claims, the Court will grant Defendants' motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. An appropriate Order accompanies this Opinion.

DATED: March 11, 2019

_____
**CLAIRE C. CECCHI, U.S.D.J.**